IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WISCONSIN CENTRAL LTD.<br>17641 South Ashland Avenue<br>Homewood, IL 60430 | : : : : | |
| Plaintiff, | : : | Civil Action No. _____ |
| v. | : : : : | |
| BROTHERHOOD OF MAINTENANCE OF<br>WAY EMPLOYES DIVISION/IBT<br>41475 Gardenbrook Drive<br>Novi, MI 48375 | : : : : : | |
| Defendant. | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Wisconsin Central LTD ("Wisconsin Central") brings this Complaint seeking a declaratory judgment that an ongoing labor dispute is subject to mandatory and exclusive arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*. In support of its Complaint, Wisconsin Central avers as follows:

**PARTIES**

1. Wisconsin Central is a Delaware corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL 60430. Wisconsin Central is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the RLA, 45 U.S.C. § 151 First. Wisconsin Central is an indirect, wholly owned subsidiary of Canadian National Railway Company ("CNR") and operates under the trade name "CN" in the U.S.

2.      Defendant Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") is an unincorporated labor organization in which employees participate and which exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of collective bargaining agreements. The principal office of the BMWED is located at the 41475 Gardenbrook Drive, Novi, MI 48375.

3.      BMWED is a "representative" within the meaning of Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth. BMWED represents Wisconsin Central employees in the craft or class of maintenance of way employees.

## JURISDICTION AND VENUE

4.      Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

5.      Wisconsin Central and BMWED are both actively doing business within this Judicial District.

6.      Venue over this action properly lies in this Judicial District under 28 U.S.C. 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this Judicial District.

## THE RLA REQUIRES ARBITRATION OF MINOR DISPUTES

7.      Under the RLA, disputes concerning the interpretation or application of collective bargaining agreements are known as "minor disputes," and are subject to mandatory arbitration. Section 3 of the RLA requires minor disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a

Special Board of Adjustment). 45 U.S.C. § 153. A union may not strike over a minor dispute. *Brotherhood of R.R. Trainmen v. Chicago R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957).

8. A minor dispute "relates either to the meaning or proper application of a particular provision [in a CBA] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303-05 (1989) ("*Conrail*") (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

9. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" reflects that the nature of the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation or change to an agreement.

10. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Conrail*, 491 U.S. at 303-305. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307. When in doubt, the courts construe disputes as minor. *Brotherhood of Loc. Eng'rs v. Atchison, Topeka & Santa Fe Ry Co.*, 768 F.2d 914, 920 (7th Cir. 1985).

## DESCRIPTION OF THE MINOR DISPUTE

11. A dispute has arisen between Wisconsin Central and BMWED concerning the interpretation or application of their collective bargaining agreements.

12. Wisconsin Central and BMWED are parties to a collective bargaining agreement that became effective initially on July 1, 2004. As amended, and together with terms implied therein through past practice and course of dealing, the July 1, 2004 collective bargaining

agreement governs the rates of pay, rules and working conditions of Wisconsin Central employees represented by BMWED.

13. Under the RLA, collective bargaining agreements do not "expire." Rather, they become "amendable" upon the expiration of a contractual commitment, known as the moratorium, during which the parties agree not to seek changes to their existing agreements. When such agreements become amendable, either or both parties may serve notices seeking changes to their agreements, pursuant to Section 6 of the RLA. Section 6 Notices begin the process by which collective bargaining agreements are amended under the RLA.

14. In the railroad industry, many railroads participate in national, multi-employer collective bargaining, known as "national handling." In the most recent round of collective bargaining which began in 2019, Wisconsin Central and the other U.S. railroads indirectly owned by CNR participated in national handling and were represented in that process by the National Carriers' Conference Committee ("NCCC"). NCCC negotiated on behalf of Wisconsin Central and other railroads in collective bargaining negotiations with BMWED and other railroad unions.

15. After more than two years of direct negotiations, the parties were unable to reach agreement. By early 2022, the unions requested mediation of the dispute before the National Mediation Board ("NMB"). Mediation was unsuccessful, and the dispute ultimately led to the creation of Presidential Emergency Board ("PEB") No. 250 to investigate the dispute and make recommendations for terms of settlement. PEB No. 250's report was issued August 16, 2022.

16. After the PEB issued its report, BMWED and NCCC reached a tentative agreement on September 10, 2022 to implement the PEB's recommendations with respect to employees represented by BMWED (the "2022 National Agreement"). In addition, Wisconsin Central and the other U.S. railroads indirectly owned by CNR negotiated to adopt the PEB's recommendation concerning reimbursement of travel expenses.

17. Wisconsin Central and the other U.S. railroads indirectly owned by CNR reached agreement with BMWED on a "Letter of Agreement" (the "CN LOA") on September 23, 2022 to adopt PEB 250's recommendations regarding travel expenses.

18. Although the BMWED membership failed to ratify the 2022 National Agreement and the CN LOA, those agreements were imposed by an Act of Congress in Public Law 117-216, which became effective December 2, 2022.

19. The parties' current dispute relates to a provision in the CN LOA governing compensation for employees who are entitled to carrier-paid lodging under the National Agreement, but who choose to forego such lodging and travel home each night of their away-from-home assignment. To share the cost-savings associated with employees who elect to forego carrier-paid lodging, and to approximate the economic value of "per diem" payments that had been made under prior agreements, the parties agreed to an hourly travel allowance, plus mileage, to be applied only for days on which an employee is entitled to, but chooses to forego, carrier-paid lodging.

20. Specifically, the CN LOA provides as follows:

> 2. This agreement only applies to employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility. These CN employees are currently classified as "Mobile".
>
> 3. Mobile employees are covered by the travel, lodging, meals and incidental expense reimbursement provisions as stated in the national agreement between the NCCC and BMWED (the "national agreement").

21. Under the CN LOA, employees who qualify for the alternative travel compensation receive an hourly increase based on the distance between the employee's address of record and the location of the hotel or job site to which the employee is assigned. The LOA provides:

> Where a Mobile employee provides at least 48-hour notice or, if less than 48 hours, sufficient notice to prevent unnecessary Company-provided lodging cost, the employee will be eligible for the following travel allowance and mileage reimbursement:
>
> i. If the job reporting point for the gang (either the hotel or job site as determined by the supervisor) is equal to or LESS than 50 miles from the employee's address of record, the employee will receive a travel allowance of $6/hour for scheduled straight time hours for each day he/she travels home during a work week (i.e., 8 hours if working a 5 on 2 off schedule and 10 hours if working a 4 on 3 off schedule).
>
> ii. If the job reporting point is MORE than 50 miles and equal to or less than 75 miles from the employee's address of record, the employee will receive a travel allowance of $4/hour for scheduled straight time hours for each day he/she travels home during a work week.

22. The expense reimbursement provisions of the CN LOA replaced the expense reimbursement provisions of the prior collective bargaining agreements between Wisconsin Central and BMWED. However, some employees who received "per diem" payments under the former Wisconsin Central agreement are not entitled to any payments under the National Agreement or the CN LOA.

23. The 2022 National Agreement and the CN LOA replaced the per diem provisions of the prior Wisconsin Central agreement and any parallel provisions of other agreements between BMWED and the other U.S. railroads indirectly owned by CN.

24. The current dispute involves the proper interpretation of the provisions in the CN LOA governing the mileage reimbursement and travel allowance for certain BMWED members who choose to drive home and decline to stay in carrier-provided lodging. The plain language of the CN LOA provides for mileage reimbursement and a travel allowance only to those employees "who work on traveling gangs or perform work that *requires* staying overnight in a lodging facility."

6

25. In contrast to this plain language, BMWED has taken the position that all employees who were previously classified as "mobile" employees under the prior Wisconsin Central agreement (*i.e.*, those without a fixed headquarters location) are entitled to mileage reimbursement and a travel allowance under the CN LOA.

26. On January 12, 2023, the President of BMWED, Tony Cardwell, sent a letter to Tracy Robinson, the President and CEO of CNR asserting that Wisconsin Central's position with regard to which employees are considered "mobile" employees entitled to mileage reimbursement and travel allowances constituted "a clear abrogation of the September 23, 2022 LOA and a violation of [Wisconsin Central's] requirements to make and maintain agreements."

27. BMWED's assertion that Wisconsin Central had "abrogated" the CN LOA and violated its obligations under the RLA to make and maintain agreements raised the possibility that BMWED might assert that it had a right to strike over the instant dispute. In the railroad industry, use of the term "abrogate" is a term of art which signifies that the labor union's position is that the dispute is a "major dispute" over which the union has the right to strike

28. To avert any disruption to the operations of Wisconsin Central, and service to the public, Wisconsin Central sought assurances from BMWED that the Union would treat the dispute as an arbitrable or "minor" dispute and refrain from striking over the dispute. BMWED refused, without justification, to give any such assurance.

29. The current dispute constitutes a "minor dispute" as that term is used under the RLA. The dispute arises out of the interpretation or application of an existing agreement concerning rates of pay, rules and working conditions. And, Wisconsin Central's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

30. BMWED does not have the legal right to strike or engage in other self-help to protest Wisconsin Central's interpretation CN LOA with respect to which employees are eligible

7

to receive a mileage reimbursement and travel allowances. Rather, under the RLA, the mandatory and exclusive process for the Union to resolve the instant dispute is through arbitration.

31. BMWED's continued refusal to acknowledge that the dispute over Wisconsin Central's interpretation of the CN LOA is not a "major dispute" under the RLA which would allow it to institute a strike or other job action, and its refusal to give assurance that it will not strike has created a real, live and ripe controversy, warranting declaratory relief by this Court.

## COUNT I – MINOR DISPUTE

32. Wisconsin Central incorporates by reference as if fully set forth herein each and every allegation of the preceding paragraphs.

33. This Cause of Action arises under Sections 2 First and 3 of the RLA, 45 U.S.C. §§152 First, 153.

34. There exists a current, live and ripe controversy that warrants declaratory relief from this Court.

35. Wisconsin Central has existing collective bargaining agreements, including the 2022 National Agreement and the CN LOA, which remain in full force and effect. These agreements, together with implied terms, past practice and other established working conditions, set forth the terms and conditions of employment of Wisconsin Central's BMWED-represented employees.

36. Wisconsin Central contends that the 2022 National Agreement and the CN LOA, as properly interpreted, only provide mileage reimbursement and travel allowances for those employees "who work on traveling gangs or perform work that *requires* staying overnight in a lodging facility." (emphasis added). BMWED disputes Wisconsin Central's interpretation of the applicable agreements, and maintains that Wisconsin Central has abrogated the parties' agreements and violated the RLA.

37. The dispute between Wisconsin Central and BMWED is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' collective bargaining agreements, and Wisconsin Central's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

38. Wisconsin Central has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BMWED.

## PRAYER FOR RELIEF

WHEREFORE, Wisconsin Central respectfully requests that the Court grant the following relief:

1. Issue a Judgment declaring that the present dispute concerning the proper interpretation of the provisions in the CN LOA governing eligibility for mileage reimbursement and travel allowances is a "minor dispute" under the RLA, and is subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

2. Order BMWED to pay the costs of these proceedings, including reasonable attorneys' fees; and

3. Grant Wisconsin Central such other and further relief as the Court may deem just and proper in the circumstances.

Dated:   January 18, 2023              Respectfully submitted,

                                                              /s/ Jeremy J. Glenn
                                                     JEREMY J. GLENN
                                                     BRITTANY GREEN
                                                     COZEN O'CONNOR
                                                     123 North Wacker Drive, Suite 1800

Chicago, IL 60606
(312)474-7981 (phone)
(312) 382-3117 (phone)
(312)706-9791 (fax)
jglenn@cozen.com
BrittanyGreen@cozen.com

and

ROBERT S. HAWKINS (*pro hac vice to be filed*)
ANDREW J. ROLFES (*pro hac vice to be filed*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215)665-2015 (phone)
(646)461-2097 (fax)
rhawkins@cozen.com
arolfes@cozen.com

Counsel for Wisconsin Central Limited

10