**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WISCONSIN CENTRAL LTD. | ) | |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) | |
| | ) | |
| GRAND TRUNK WESTERN RAILROAD COMPANY, | ) | Civil Action No. 1:23-CV-00291 |
| | ) | |
| CHICAGO, CENTRAL & PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BESSEMER AND LAKE ERIE RAILROAD COMPANY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER TO SECOND AMENDED COMPLAINT FOR**
**DECLARATORY JUDGMENT AND COUNTERCLAIM**
**FOR DECLARATORY JUDGMENT**

This answer to second amended complaint and counterclaim for declaratory judgment is submitted by defendant Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") in response to the second amended complaint filed by plaintiffs Wisconsin Central LTD ("Wisconsin Central"), Illinois Central Railroad Company ("Illinois Central"), Grand Trunk Western Railroad Company ("GTW"), Chicago Central & Pacific Railroad Company ("CCP") and Bessemer and Lake Erie Railroad Company ("B&LE") (collectively "CN Railroads").

## ANSWER

Plaintiffs, Wisconsin Central LTD ("Wisconsin Central"), Illinois Central Railroad Company ("Illinois Central"), Grand Trunk Western Railroad Company ("GTW"), Chicago Central & Pacific Railroad Company ("CCP") and Bessemer and Lake Erie Railroad Company ("B&LE") bring this Complaint seeking a declaratory judgment that an ongoing labor dispute is subject to mandatory and exclusive arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* This Second Amended is filed with the consent of Defendant, pursuant to Fed. R. Civ. P. 15(a)(2). In support of their Complaint, Plaintiffs aver as follows:

ANSWER: The unnumbered introductory paragraph of the complaint of the CN Railroads describes the complaint, so no answer is necessary. To the extent that an answer may be required, BMWED admits that the introductory paragraph is an accurate description of the position of the CN Railroads in this litigation.

1.    Wisconsin Central is a Delaware corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL 60430. Wisconsin Central is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the RLA, 45 U.S.C. § 151 First. Wisconsin Central is an indirect, wholly owned subsidiary of Canadian National Railway Company ("CNR") and operates under the trade name "CN" in the U.S.

ANSWER: The allegations contained in paragraph 1of the complaint are admitted.

2.    Plaintiff Illinois Central is an Illinois corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL 60430. Illinois Central is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the RLA, 45 U.S.C. § 151 First. Illinois Central is an indirect, wholly owned subsidiary of CNR and operates under the trade name "CN" in the U.S.

ANSWER: The allegations contained in paragraph 2 of the complaint are admitted.

3.    Plaintiff GTW is a Michigan corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL 60430. GTW is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the RLA,45 U.S.C. §151 First. GTW is an indirect, wholly owned subsidiary of CNR and operates under the trade name "CN" in the U.S.

ANSWER: The allegations contained in paragraph 3 of the complaint are admitted.

4.    Plaintiff CCP is a Delaware corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL 60430. CCP is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the

RLA, 45 U.S.C. § 151 First. CCP is an indirect, wholly owned subsidiary of CNR and operates under the trade name "CN" in the U.S.

ANSWER: The allegations contained in paragraph 4 of the complaint are admitted.

5.     Plaintiff B&LE is a Delaware corporation with its principal place of business at 17641 South Ashland Avenue, Homewood, IL  60430.  B&LE is engaged in the transportation of freight by rail in interstate commerce and is a "carrier" as defined in Section 1 First of the RLA, 45 U.S.C. § 151 First.   B&LE is an indirect, wholly owned subsidiary of CNR and operates under the trade name "CN" in the U.S.

ANSWER: The allegations contained in paragraph 5 of the complaint are admitted.

6.     Defendant Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") is an unincorporated labor organization in which employees participate and which exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of collective bargaining agreements.  The principal office of the BMWED is located at the 41475 Gardenbrook Drive, Novi, MI 48375.

ANSWER: The allegations contained in paragraph 6 of the complaint are admitted.

7.     BMWED is a "representative" within the meaning of Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth.  BMWED represents employees of the Plaintiff railroads in the craft or class of maintenance of way employees.

ANSWER: The allegations contained in paragraph 7 of the complaint are admitted.

8.     Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§1331, 1337.

ANSWER: The allegations contained in paragraph 8 of the complaint are admitted.

9.     Plaintiffs and BMWED are all actively doing business within this Judicial District.

ANSWER: The allegations contained in paragraph 9 of the complaint are admitted.

10.     Venue over this action properly lies in this Judicial District under 28 U.S.C. 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this Judicial District.

ANSWER: The allegations contained in paragraph 10 of the complaint are admitted.

11.     Under the RLA, disputes concerning the interpretation or application of collective bargaining agreements are known as "minor disputes," and are subject to mandatory arbitration. Section 3 of the RLA requires minor disputes to be resolved exclusively through arbitration

before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153. A union may not strike over a minor dispute. *Brotherhood of R.R. Trainmen v. Chicago R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957).

ANSWER: Paragraph 11 of the complaint does not contain allegations of fact but, rather, conclusions of law, and description provisions of the Railway Labor Act, and of elements of decisions under the Railway Labor Act, so an answer to paragraph 11 is not required. Additionally, because paragraph 11 contains legal argument, the assertions in paragraph 11 do not constitute a "plain statement of the claim" or a "simple, concise and direct" statement as required by Fed. R. Civ. P. 8(a) and (d), so no answer to paragraph 11 is required.

12.  A minor dispute "relates either to the meaning or proper application of a particular provision [in a CBA] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n.*, 491 U.S. 299, 303-05 (1989) ("*Conrail*") (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

ANSWER: Paragraph 12 of the complaint does not contain allegations of fact but, rather, conclusions of law, and a description of elements of decisions under the Railway Labor Act, so an answer to paragraph 12 is not required. Additionally, because paragraph 12 contains legal argument, the assertions in paragraph 12 do not constitute a "plain statement of the claim" or a "simple, concise and direct" statement as required by Fed. R. Civ. P. 8(a) and (d), so no answer to paragraph 12 is required.

13.  The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" reflects that the nature of the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation or change to an agreement.

ANSWER: Paragraph 13 of the complaint does not contain allegations of fact but, rather, conclusions of law, and a description of Railway Labor Act law, so an answer to paragraph 13 is not required. Additionally, because paragraph 13 contains legal argument, the assertions in

paragraph 13 do not constitute a "plain statement of the claim" or a "simple, concise and direct" statement as required by Fed. R. Civ. P. 8(a) and (d), so no answer to paragraph 13 is required.

14.     Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Conrail*, 491 U.S. at 303-305. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307. When in doubt, the courts construe disputes as minor. *Brotherhood of Loc. Eng'rs v. Atchison, Topeka & Santa Fe Ry Co*., 768 F.2d 914, 920 (7th Cir. 1985).

ANSWER: Paragraph 14 of the complaint does not contain allegations of fact but, rather, conclusions of law, and a description of elements of decisions under the Railway Labor Act, so an answer to paragraph 14 is not required. Additionally, because paragraph 14 contains legal argument, the assertions in paragraph 14 do not constitute a "plain statement of the claim" or a "simple, concise and direct" statement as required by Fed. R. Civ. P. 8(a) and (d), so no answer to paragraph 14 is required.

15.     A dispute has arisen between Plaintiffs and BMWED concerning the interpretation or application of their collective bargaining agreements.

ANSWER: BMWED admits that there is a dispute between the CN Railroads and BMWED. BMWED denies that the dispute concerns interpretation or application of collective bargaining agreements. BMWED avers that the dispute concerns the CN Railroads' violation of the RLA.

16.     Plaintiffs and BMWED are parties to various collective bargaining agreements that as amended, and together with terms implied therein through past practice and course of dealing, govern the rates of pay, rules and working conditions of Plaintiffs' employees represented by BMWED.

ANSWER: The allegations contained in paragraph 16 of the complaint are admitted.

17.     Under the RLA, collective bargaining agreements do not "expire." Rather, they become "amendable" upon the expiration of a contractual commitment, known as the moratorium, during which the parties agree not to seek changes to their existing agreements. When such agreements become amendable, either or both parties may serve notices seeking

changes to their agreements, pursuant to Section 6 of the RLA. Section 6 Notices begin the process by which collective bargaining agreements are amended under the RLA.

ANSWER: Paragraph 17 of the complaint does not contain allegations of fact but, rather, conclusions of law, and a description of Railway Labor Act law, so an answer to paragraph 17 is not required. Additionally, because paragraph 17 contains legal argument, the assertions in paragraph 17 do not constitute a "plain statement of the claim" or a "simple, concise and direct" statement as required by Fed. R. Civ. P. 8(a) and (d), so no answer to paragraph 17 is required.

18. In the railroad industry, many railroads participate in national, multi-employer collective bargaining, known as "national handling." In the most recent round of collective bargaining which began in 2019, Plaintiffs participated in national handling and were represented in that process by the National Carriers' Conference Committee ("NCCC"). NCCC negotiated on behalf of Plaintiffs and other railroads in collective bargaining negotiations with BMWED and other railroad unions.

ANSWER: The allegations contained in paragraph 18 of the complaint are admitted.

19. After more than two years of direct negotiations, the parties were unable to reach agreement. By early 2022, the unions requested mediation of the dispute before the National Mediation Board ("NMB"). Mediation was unsuccessful, and the dispute ultimately led to the creation of Presidential Emergency Board ("PEB") No. 250 to investigate the dispute and make recommendations for terms of settlement. PEB No. 250's report was issued August 16, 2022.

ANSWER: The allegations contained in paragraph 19 of the complaint are admitted.

20. After the PEB issued its report, BMWED and NCCC reached a tentative agreement on September 10, 2022 to implement the PEB's recommendations with respect to employees represented by BMWED (the "2022 National Agreement"). In addition, Plaintiffs negotiated with BMWED to adopt the PEB's recommendation concerning reimbursement of travel expenses.

ANSWER: The allegations contained in paragraph 20 of the complaint are admitted, except that the recommendation concerning reimbursement for away from home expenses when employees travel was adapted by the parties to include additional provisions.

21. Plaintiffs reached agreement with BMWED on a "Letter of Agreement" (the "CN LOA") on September 23, 2022 to adopt PEB 250's recommendations regarding travel expenses.

ANSWER: The allegations contained in paragraph 21 of the complaint are admitted.

22.     Although the BMWED membership failed to ratify the 2022 National Agreement and the CN LOA, those agreements were imposed by an Act of Congress in Public Law 117-216, which became effective December 2, 2022.

ANSWER: The allegations contained in paragraph 22 of the complaint are admitted.

23.     The parties' current dispute relates to a provision in the CN LOA governing compensation for employees who are entitled to carrier-paid lodging under the National Agreement, but who choose to forego such lodging and travel home each night of their away-from-home assignment.  To share the cost-savings associated with employees who elect to forego carrier-paid lodging, and to approximate the economic value of "per diem" payments that had been made under prior agreements, the parties agreed to an hourly travel allowance, plus mileage, to be applied only for days on which an employee is entitled to, but chooses to forego, carrier-paid lodging.

ANSWER: BMWED admits that the parties' current dispute concerns the CN LOA. The remaining allegations of paragraph 23 of the complaint are denied. BMWED avers that the dispute concerns the CN Railroads' rejection of their obligation to make payments to certain employees eligible to receive payments under the CN LOA.

24.     Specifically, the CN LOA provides as follows:

> 2.     This agreement only applies to employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility. These CN employees are currently classified as "Mobile".
>
> 3.     Mobile employees are covered by the travel, lodging, meals and incidental expense reimbursement provisions as stated in the national agreement between the NCCC and BMWED (the "national agreement").

ANSWER: The allegations contained in paragraph 24 of the complaint are admitted.

25.     Under the CN LOA, employees who qualify for the alternative travel compensation receive an hourly increase based on the distance between the employee's address of record and the location of the hotel or job site to which the employee is assigned.  The LOA provides:

> Where a Mobile employee provides at least 48-hour notice or, if less than 48 hours, sufficient notice to prevent unnecessary

Company-provided lodging cost, the employee will be eligible for the following travel allowance and mileage reimbursement:

i.      If the job reporting point for the gang (either the hotel or job site as determined by the supervisor) is equal to or LESS than
50 miles from the employee's address of record, the employee will receive a travel allowance of $6/hour for scheduled straight time hours for each day he/she travels home during a work week (i.e., 8 hours if working a 5 on 2 off schedule and 10 hours if working a 4 on 3 off schedule).

ii.      If the job reporting point is MORE than 50 miles and equal to or less than 75 miles from the employee's address of record, the employee will receive a travel allowance of $4/hour for scheduled straight time hours for each day he/she travels home during a work week.

ANSWER: The allegations contained in paragraph 25 of the complaint are admitted, although BMWED describes the payments as an hourly allowance, rather than an increase.

26.      The 2022 National Agreement and the expense reimbursement provisions of the CN LOA replaced the expense reimbursement provisions of the prior collective bargaining agreements between Plaintiffs and BMWED. However, some employees who received "per diem" payments under Plaintiffs' prior agreements with BMWED are not entitled to any payments under the National Agreement or the CN LOA.

ANSWER: The allegations contained in the first sentence of paragraph 26 of the complaint are admitted. The allegations contained in the second sentence of paragraph 26 are denied. BMWED avers that eligibility for payments under the CN LOA depends on whether the employee's position assignment is a Mobile assignment, and whether the employee elects to forego provision of overnight lodging and meals and incidental expense reimbursement available under the National Agreement.

27.      The current dispute involves the proper interpretation of the provisions in the CN LOA governing the mileage reimbursement and travel allowance for certain BMWED members who choose to drive home and decline to stay in carrier-provided lodging. The plain language of the CN LOA provides for mileage reimbursement and a travel allowance only to those employees "who work on traveling gangs or perform work that *requires* staying overnight in a lodging facility."

ANSWER: The allegations contained in the first sentence of paragraph 27 of the complaint are denied. The allegations contained in the second sentence of paragraph 27 are admitted except that there is no emphasis on the word "requires" in the CN LOA.

28.    In contrast to this plain language, BMWED has taken the position that all employees who were previously classified as "mobile" employees under Plaintiffs' prior agreements with BMWED (*i.e.*, those without a fixed headquarters location) are entitled to mileage reimbursement and a travel allowance under the CN LOA.

ANSWER: The allegations contained in paragraph 28 of the complaint are denied. BMWED's position is that all employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility, who are employees classified as "Mobile", are entitled to mileage reimbursement and a travel allowance under the CN LOA.

29.    On January 12, 2023, the President of BMWED, Tony Cardwell, sent a letter to Tracy Robinson, the President and CEO of CNR asserting that Plaintiffs' position with regard to which employees are entitled to mileage reimbursement and travel allowances constituted "a clear abrogation of the September 23, 2022 LOA and a violation of [Plaintiffs'] requirements to make and maintain agreements."

ANSWER: The allegations contained in paragraph 29 of the complaint are admitted.

30.    BMWED's assertion that Plaintiffs had "abrogated" the CN LOA and violated their obligations under the RLA to make and maintain agreements raised the possibility that BMWED might assert that it had a right to strike over the instant dispute.  In the railroad industry, use of the term "abrogate" is a term of art which signifies that the labor union's position is that the dispute is a "major dispute" over which the union has the right to strike.

ANSWER: The allegations contained in paragraph 30 of the complaint are denied. BMWED avers that the CN Railroads have abrogated the CN LOA have therefore violated Section 2 Seventh of the Railway Labor Act such that the parties' dispute is a major dispute. BMWED avers that failure to make every reasonable effort to maintain agreements is a violation of Section 2 First of the Railway Labor Act. A judicial finding that a carrier has violated the Railway Labor Act deprives a court of jurisdiction to enjoin a responsive strike.

31.     To avert any disruption to Plaintiffs' operations, and service to the public, Plaintiffs sought assurances from BMWED that the Union would treat the dispute as an arbitrable or "minor" dispute and refrain from striking over the dispute.  BMWED refused, without justification, to give any such assurance.

ANSWER: BMWED admits that the CN Railroads asked BMWED to treat the parties'

dispute as a minor dispute subject to arbitration and to refrain from striking. BMWED has no

knowledge of the motivation of the CN Railroads in making that request. The allegations

contained in the second sentence of paragraph 31 are denied.

32.     The current dispute constitutes a "minor dispute" as that term is used under the RLA. The dispute arises out of the interpretation or application of an existing agreement concerning rates of pay, rules and working conditions.  And, Plaintiffs' position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

ANSWER: The allegations contained in paragraph 32 of the complaint are denied.

33.     BMWED does not have the legal right to strike or engage in other self-help to protest Plaintiffs' interpretation of the CN LOA with respect to which employees are eligible to receive a mileage reimbursement and travel allowances.   Rather, under the RLA, the mandatory and exclusive process for the Union to resolve the instant dispute is through arbitration.

ANSWER: The allegations contained in paragraph 33 of the complaint are denied.

34.     BMWED's continued refusal to acknowledge that the dispute over Plaintiffs' interpretation of the CN LOA is not a "major dispute" under the RLA which would allow it to institute a strike or other job action, and its refusal to give assurance that it will not strike has created a real, live and ripe controversy, warranting declaratory relief by this Court.

ANSWER: The allegations contained in paragraph 34 of the complaint are denied, but

BMWED admits that there is a real, live and ripe controversy between the parties.

35.     Plaintiffs' incorporate by reference as if fully set forth herein each and every allegation of the preceding paragraphs.

ANSWER: BMWED incorporates by reference its answers to paragraphs 1-34 of the

complaint.

36.    This Cause of Action arises under Sections 2 First and 3 of the RLA, 45 U.S.C. §§152 First, 153.

ANSWER: BMWED admits that the CN Railroads have brought this action under Sections 2 First and 3 of the Railway Labor Act. BMWED denies that the CN Railroads have a valid claim under those provisions.

37.    There exists a current, live and ripe controversy that warrants declaratory relief from this Court

ANSWER: BMWED admits that there is a real, live and ripe controversy between the Parties, but not that there is one based on the claims of the CN Railroads.

38.    Plaintiffs have existing collective bargaining agreements, including the 2022 National Agreement and the CN LOA, which remain in full force and effect.  These agreements, together with implied terms, past practice and other established working conditions, set forth the terms and conditions of employment of Plaintiffs' BMWED-represented employees.

ANSWER: The allegations contained in paragraph 38 of the complaint are admitted.

39.    Plaintiffs contend that the 2022 National Agreement and the CN LOA, as properly interpreted, only provide mileage reimbursement and travel allowances for those employees "who work on traveling gangs or perform work that *requires* staying overnight in a lodging facility." (emphasis added).  BMWED disputes Plaintiffs' interpretation of the applicable agreements, and maintains that Plaintiffs have abrogated the parties' agreements and violated the RLA.

ANSWER: The allegations contained in paragraph 39 of the complaint are denied except that BMWED admits that it maintains that the CN Railroads have abrogated the CN LOA and violated the Railway Labor Act.

40.    The dispute between Plaintiffs and BMWED is a minor dispute under the RLA, and thus subject to mandatory arbitration.  The nature of the dispute is one that arises out of the interpretation or application of the parties' collective bargaining agreements, and Plaintiffs' position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

ANSWER: The allegations contained in paragraph 40 of the complaint are denied.

41.    Plaintiffs have at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BMWED.

ANSWER: The allegations contained in paragraph 41 of the complaint are denied.

BMWED denies that the CN Railroads are entitled to the relief they have requested, or any relief whatsoever in this matter.

BMWED respectfully submits that the CN Railroads' complaint should be dismissed, and they should be granted no relief.

## COUNTERCLAIM

BMWED brings this complaint brings this complaint against Wisconsin Central Railroad, Ltd. ("WC"); Grand Trunk Western Railroad Company ("GTW"); Illinois Central Railroad Company and Chicago, Central & Pacific Railroad Company ("IC/CCP"); and Bessemer and Lake Erie Railroad ("B&LE"), all of which are subsidiaries of Canadian National Railway Company ("CNR") and do business in the United States as CN or CN/US (GTW, IC, WC, B&LE and subsidiary or affiliate railroads are collectively referred to herein as the "CN Railroads" or "Carriers", or individually as- "Carrier"), for a declaratory order that the CN Railroads have violated Sections 2 Seventh of the Railway Labor Act ("RLA"), 45 U.S.C. §152 Seventh, by unilaterally changing and abrogating an agreement concerning payments to "mobile" employees of the CN Railroads for their travel between their work locations and their homes.

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE"). BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151

Sixth, of all employees of the CN Railroads working in the class or craft of maintenance of way employee.

2.   GTW, IC/CCP, WC, B&LE; as well as their subsidiaries such as Cedar River Railroad Company; Elgin Joliet and Eastern Railroad; Duluth, Winnipeg, & Pacific Railroad; and Duluth, Missabe and Iron Age Railway are railroad subsidiaries of Grand Trunk Corporation, which is a holding company controlled by CNR. The CN Railroads are all "rail carriers" as that term is defined in Section 1 First of the RLA, 45 U.S.C. §151 First. The CN Railroads conduct rail operations in Michigan, Ohio, Illinois, Iowa, Wisconsin, Kentucky, Tennessee, Mississippi and other Midwestern and Central States.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because BMWED seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because various CN Railroads have rail lines in this District, they all do business in this District, the headquarters for the CN railroads is located in Homewood, IL, and labor relations for the CN Railroads is conducted out of offices in Homewood, IL.

## STATEMENT OF THE CLAIM

5. BMWED and the CN Railroads are parties to collective bargaining agreements that apply on rail properties that previously were separate railroads; including: the properties of the GTW ("June 2008 Agreement"); Illinois Central Railroad and Elgin, Joliet and Eastern Railroad, Cedar River Railroad Company and Chicago, Central & Pacific Railroad Company ("July 2007 Agreement"); Bessemer and Lake Erie Railroad ("September 1999 Agreement"); Wisconsin

Central Railroad, Duluth, Winnipeg, & Pacific Railroad, Duluth, Missabe and Iron Age Railway, Minnesota and Manitoba Railway ("March 2014 Agreement"). BMWED's agreements with the CN Railroads also incorporate certain agreements on specific subjects that were negotiated with multiple carriers (such as a vacation agreement, a union shop agreement and a job stabilization agreement).

6. BMWED's agreements with the CN Railroads were last amended as a result of legislation (Public Law 117-216) imposing on the parties' the terms of a tentative agreement negotiated after issuance of a report of Presidential Emergency Board 250 ("PEB 250") which followed several years of national bargaining and mediation by the National Mediation Board. The legislation imposing a settlement based on the tentative agreement was enacted on December 2, 2022.

7. One component of the agreement negotiated by BMWED and the CN Railroads after issuance of the report of PEB 250, which was ultimately imposed by legislation, was a Letter of Agreement ("CN LOA") concerning reimbursements to employees of the CN Railroads who are categorized as "Mobile" employees.

8. Employees are considered Mobile when the positions they fill are advertised by the Carrier as Mobile—meaning that the employees do not report to a fixed headquarters location, but report to wherever their supervisors direct them to report; as such, their reporting locations may change daily. By contrast, Headquartered employees report to fixed locations and their work-day and regular compensation begin and end at the fixed location; such jobs are bulletined by the Carrier as Headquartered positions.

9. The CN LOA concerning mileage reimbursements and travel allowance payments for employees who travel between their reporting points and their homes defines Mobile employees

as "employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility".

10. The CN LOA further provides:

4. The terms below only apply to travel home during a work week or multiple day work assignment and do not affect reimbursement terms under the national agreement for mileage and expense reimbursement at the start and end of the work week or multiple-day work assignment.

5. A Mobile employee who chooses to drive home and forego overnight lodging and M&IE (meals and incidental expense) per diem during a work week or multiple day work assignment, regardless of whether the day the employee travels home is a weekday or weekend day, will be eligible for mileage reimbursement and travel allowance payment according to the following terms:

a.  The employee must advise his/her supervisor at least forty-eight (48) hours prior to hotel check-in or, if less than 48-hour notice, at the earliest opportunity to prevent unnecessary Company-provided lodging cost.

b.  Where a Mobile employee provides at least 48-hour notice or, if less than 48 hours, sufficient notice to prevent unnecessary Company-provided lodging cost, the employee will be eligible for the following travel allowance and mileage reimbursement:

i.  If the job reporting point for the gang (either the hotel or job site as determined by the supervisor) is equal to or LESS than 50 miles from the employee's address of record, the employee will receive a travel allowance of $6/hour for scheduled straight time hours for each day he/she travels home during a work week (i.e., 8 hours if working a 5 on 2 off schedule and 10 hours if working a 4 on 3 off schedule).

ii.  If the job reporting point is MORE than 50 miles and equal to or less than 75 miles from the employee's address of record, the employee will receive a travel allowance of $4/hour for scheduled straight time hours for each day he/she travels home during a work week.

iii.  The employee will receive mileage reimbursement at the current IRS rate for round trip miles driven between the job reporting point and the employee's address of record, not to exceed 150 miles.

11. Shortly after the tentative agreement was legislatively imposed, BMWED learned that the CN Railroads were taking the position that, under the CN LOA, only certain Mobile employees were eligible to receive travel allowance payments for travel between their reporting points and their homes, in lieu of staying at overnight lodging. The CN Railroads said that only employees who were performing work that <u>requires</u> staying overnight in a lodging facility are eligible for mileage reimbursement and a travel allowance. The Carriers also said that employees may not be eligible for travel allowance based on where they report to work, even though the Carrier has designated their position as Mobile and determines where they report to work.

12. Under the position of the CN Railroads, traveling employees whose work does not require that they stay at overnight lodging, are not eligible for travel allowances. The CN Railroads take this position even though the CN LOA provides that mileage reimbursements and travel allowances are available to "employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility".

13. Under the position of the CN Railroads, traveling employees who fill positions designated by the Carrier as Mobile may not be eligible for travel allowances if the Carrier thinks they should not receive travel allowances because of their reporting points- which are set by the Carrier.

14. Under the position of the CN Railroads, a "Mobile" employee, as defined in paragraph 2 of the CN LOA (working on a traveling gang or performing work that requires staying overnight in a lodging facility) whose reporting point determined by a supervisor is less than 50 miles from the employee's home, is not eligible for mileage reimbursement and a $6 per hour travel allowance as provided for in paragraph 5.b.i. of the CN LOA if the Carrier decides that the work does not require overnight lodging, or if the Carrier deems the employee's reporting point as

disqualifying the employee from receiving a travel allowance.

15. On January 12, 2023, BMWED's President wrote to the CEO of CNR, objecting to the refusal of the CN Railroads to pay travel allowances to all Mobile employees as defined in the CN LOA.

16. On January 17, 2023, the Director Labor Relations for the CN Railroads responded to BMWED's President stating that the CN Railroads are fully complying with the CN LOA.

17. As of the date of this complaint, the CN Railroads insist that they will pay travel allowances to Mobile employees who return home from their reporting point when the Carrier determines that their work requires a stay in overnight lodging. The CN Railroads are refusing to pay travel allowances to traveling gang Mobile employees who return home from their reporting point when the Carrier decides their work does not require overnight lodging.

18. As of the date of this complaint, the CN Railroads insist that they will pay travel allowances to Mobile employees who return home from their reporting point if the Carrier decides their reporting point qualifies them for a travel allowance. The CN Railroads are refusing to pay travel allowances to Mobile employees who return home from their reporting point when the Carrier believes that their reporting point disqualifies them from receiving travel allowances.

## **CAUSE OF ACTION**

19. The allegations of paragraphs 1 through 18 are incorporated by reference pursuant Fed. R. Civ. P. 10(c).

20. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

21. Section 6 of the RLA, 45 U.S.C. § 156, provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

22. By paying travel allowances to traveling gang Mobile employees who return home from their reporting point only when the Carrier determines that their work requires a stay in overnight lodging, and by refusing to pay travel allowances to traveling gang Mobile employees who return home from their reporting point when the Carrier decides their work does not require overnight lodging, the CN Railroads are unilaterally changing and abrogating the parties' collective bargaining agreements by refusing to pay travel allowances to a group of Mobile employees as defined in paragraph 2 of the CN LOA–employees who work on traveling gangs whose work does not require staying overnight in a lodging facility.

23. By paying travel allowances to Mobile employees who return home from their reporting point only when the Carrier determines that their reporting point, which is set by the Carrier, qualifies them for receiving travel allowances, the CN Railroads are unilaterally changing and abrogating the parties' collective bargaining agreements by refusing to pay travel allowances to employees who are entitled to them under the CN LOA.

24.  By refusing to pay travel allowances to all Mobile employees as defined in paragraph 2 of the CN LOA, the CN Railroads are unilaterally changing and abrogating the parties' collective bargaining agreements in violation of RLA Section 2 Seventh.

## **REQUEST FOR RELIEF**

WHEREFORE, BMWED respectfully requests that the Court:

A.  DECLARE that the CN railroads have violated RLA Section 2 Seventh by unilaterally changing their agreements with BMWED by refusing to pay travel allowances to all Mobile employees as defined in paragraph 2 of the CN LOA.

B.  GRANT BMWED all additional relief that may be equitable, including a reasonable award of attorneys' fees.

Respectfully submitted,

*/s/ Richard S. Edelman*
Richard S. Edelman (ARDC No. 416348)
Aaron S. Edelman (ARDC No. 1048499)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
Redelman@MooneyGreen.com
Aedelman@ MooneyGreen.com

*/s/ Wesley Kennedy*
Wesley Kennedy (ARDC No. 6188189)
Karen I. Engelhardt (ARDC No. 3128850)
Patrick J. Foote (ARDC No. 6335874)
Allison, Slutsky, and Kennedy
230 West Monroe, Suite 2600
Chicago, Illinois 60606
312.364 9400
kennedy@ask-attorneys.com
kie@ask-attorneys.com
foote@ask-attorneys.com

19

Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT

February 7, 2023

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of this Answer to Second Amended Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment to be served on the following individuals via the court's ECF E-Filing system:

> Jeremy J. Glenn
> Brittany Green
> COZEN O'CONNOR
> 123 North Wacker Drive, Suite 1800
> Chicago, IL 60606
> (312) 474-7981 (phone)
> (312) 382-3117 (phone)
> (312) 706-9791 (fax)
> jglenn@cozen.com
> brittanygreen@cozen.com

> Respectfully submitted,
> /s/ Patrick J. Foote
> Patrick J. Foote
> ALLISON, SLUTSKY & KENNEDY, P.C.
> 230 W. Monroe Street, Suite 2600
> Chicago, IL 60606
> (312) 364-9400
> kie@ask-attorneys.com
> foote@ask-attorneys.com