IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WISCONSIN CENTRAL LTD. ILLINOIS CENTRAL RAILROAD COMPANY, GRAND TRUNK WESTERN RAILROAD COMPANY, CHICAGO, CENTRAL & PACIFIC RAILROAD COMPANY, and BESSEMER AND LAKE ERIE RAILROAD COMPANY, Plaintiffs/Counterclaim Defendants, v. BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT Defendant/Counterclaim Plaintiff. | Civil Action No. 1:23-CV-00291-JJT-MV |

**MEMORANDUM OF LAW OF BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Richard S. Edelman (ARDC No. 416348)
Mooney, Green, Saindon, Murphy & Welch
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
redelman@mooneygreen.com

Wesley Kennedy (ARDC No. 6188189)
Karen I. Engelhardt (ARDC No. 3128850)
Patrick J. Foote (ARDC No. 6335874)
Allison, Slutsky, and Kennedy
230 West Monroe, Suite 2600
Chicago, Illinois 60606
(312) 364 9400
kennedy@ask-attorneys.com
kie@ask-attorneys.com
foote@ask-attorneys.com

*Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

I. INTRODUCTION ........................................................................................... 1

II. FACTS ............................................................................................................. 1

III. MAJOR AND MINOR DISPUTES UNDER THE RAILWAY LABOR ACT ......... 4

    A. The RLA's "Status Quo" Requirement and Its Processes for Resolution of Disputes ............................................................................................ 4

    B. The Method For Distinguishing Between Major Disputes And Minor Disputes ............................................................................................ 5

IV. STANDARD FOR GRANTING SUMMARY JUDGMENT ................................... 10

V. ARGUMENT ................................................................................................. 11

    A. BMWED is Entitled to Summary Judgment That the CN Railroads Have Abrogated the CN LOA ....................................................................... 11

VI. CONCLUSION ............................................................................................. 15

**TABLE OF AUTHORITIES**

**CASES**

Page

*Alton & Southern Lodge No. 306 v. Alton & Southern Ry.*,
 849 F. 2d 111 (8th Cir. 1987) ................................................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ............................................................................................................ 11

*Ass'n of Flight Attendants v. Mesa Air Group*,
 567 F. 3d 1043 (9th Cir. 2009) ............................................................................................. 5

*Brotherhood of Locomotive Engineers v. Springfield Terminal Ry.*,
 210 F.3d 18 (1st Cir. 2000) ............................................................................................ 9, 12

*Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific R. R. Co.*,
 879 F. 3d 754 (7th Cir. 2017) ........................................................................................... 5, 7

*Brotherhood of Maintenance of Way Employees v. Atchison Topeka & Santa Fe Ry.*,
 138 F. 3d 635 (7th Cir. 1998) ............................................................................................. 10

*Brotherhood of Maintenance of Way Employees Lodge 16 v. Burlington Northern R.R. Co.*,
 802 F. 2d 1016 (8th Cir. 1986) ............................................................................................. 8

*Brotherhood of Maintenance of Way Employes v. Chicago and North Western Transp. Co.*,
 827 F 2d 330 (8th Cir. 1987) ................................................................................................ 8

*Brotherhood of Maintenance of Way Employes Division v. National Railroad Passenger Corp.*,
 2016 WL 6783199 (D.D.C. 2016) ........................................................................................ 8

*Burlington Northern and Santa Fe Ry. v. Brotherhood of Locomotive Engineers*,
 2002 WL 47963 (N.D. Ill. 2002) .......................................................................................... 9

*Burlington Northern R.R. Co. v. United Transp. Union*,
 862 F. 2d 1266 (7th Cir. 1988) ............................................................................................. 8

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ...................................................................................................... 10, 11

*Consolidated Rail Corp. v. Ry. Labor Executives' Assn.*,
 491 U.S. 299 (1989) ..................................................................................................... passim

*Detroit and Toledo Shore Line R.R. v. United Transp. Union*,
 396 U.S. 142 (1969) ............................................................................................................. 5

*Duff v. Grandberry*,
  2017 BL 188499 (N.D. IL 2017) ........................................................................................ 10

*Int'l Ass'n of Machinists v. Varig, SA*,
  499 F. Supp. 2d 469 (S.D. NY 2007) ............................................................................. 9, 12

*International Brotherhood of Teamsters v North American Airlines*,
  518 F. 3d 1052 (9th Cir. 2008) ........................................................................................... 4

*Juarez v. Ameritech Mobile Communications, Inc.*,
  957 F.2d 317 (7th Cir. 1992) ............................................................................................ 11

*Local 553 TWU v. Eastern Airlines*,
  695 F. 2d 671 (2d Cir. 1983) .............................................................................................. 9

*Mitchell v Continental Airlines, Inc.*,
  481 F. 3d 225 (5th Cir. 2007) ............................................................................................. 5

*Modrowski v. Pigatto*,
  712 F. 3d 1166 (7th Cir. 2013) ......................................................................................... 11

*Railway Labor Executives Ass'n. v. Norfolk & Western Ry.*,
  833 F. 2d 700 (7th Cir. 1987) ........................................................................................ 7, 9

*Sarver v. Experian Info. Solutions*,
  390 F.3d 969 (7th Cir. 2004) ............................................................................................ 11

*SMS Demag Aktiengellschaft v. Materials Services Corp.*,
  565 F 3d 365 (7th Cir. 2009) ...................................................................................... 10, 11

*Wheeling & Lake Erie Ry. Co. v. B'hood of Locomotive Engineers and Trainmen*,
  789 F. 3d 681 (6th Cir. 2015) ........................................................................... 6, 7, 8, 9, 12

## STATUTES AND REGULATIONS

45 U.S.C. §152, *et seq.* ........................................................................................... *passim*

Fed. R. Civ. P. 56 ................................................................................................................ 10

**I. INTRODUCTION**

An agreement between the Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") and Wisconsin Central LTD ("Wisconsin Central"), Illinois Central Railroad Company ("Illinois Central"), Grand Trunk Western Railroad Company ("GTW"), Chicago Central & Pacific Railroad Company ("CCP"), and Bessemer and Lake Erie Railroad Company ("B&LE") (collectively "CN Railroads", or "Carriers") provides that "employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility…[who] are currently classified as Mobile" are eligible to be paid travel allowances in specified amounts in certain circumstances. However, almost immediately after the agreement became effective, the CN Railroads refused to pay travel allowances to groups of employees who are eligible for allowances under the terms of the agreement; the refusal was not based on assertions that the circumstances of those employees were not those specified by the agreement as entitling an eligible employee to a travel allowance. Rather, the Carriers unilaterally declared those employees ineligible for the allowances. In doing so, the CN Railroads abrogated their agreement with BMWED. BMWED therefore seeks a summary judgment that the CN Railroads have violated RLA Section 2 Seventh, 45 U.S.C. §152 Seventh which prohibits unilateral changes in RLA agreements.

**II. FACTS**

In accordance with Local Rule 56.1, BMWED's Statement of Material Facts that the Union contends are not disputed or cannot be disputed ("SOMF") is a separate document. The facts are summarized below with references to the SOMF.

BMWED and the CN Railroads are parties to collective bargaining agreements that apply on rail properties that previously were separate railroads. SOMF ¶1. Those agreements were last

amended as a result of legislation enacted on December 2, 2022 (Public Law 117-216) imposing on the parties' the terms of a tentative agreement negotiated after issuance of a report of Presidential Emergency Board 250 ("PEB 250"). SOMF ¶2. One component of the agreement negotiated by BMWED and the CN Railroads that was ultimately imposed by legislation, was a Letter of Agreement ("CN LOA") concerning payments to employees of the CN Railroads who are categorized as "Mobile" employees. SOMF ¶3.

The CN LOA states that it "…applies to employees who work on traveling gangs or perform work that requires staying overnight in a lodging facility. These CN employees are currently classified as Mobile". SOMF ¶7. Maintenance of Way positions on the CN Railroads are considered either "Headquartered", meaning they report to a fixed location, and their work-day and regular compensation begin and end at the fixed location; or "Mobile", meaning that the employees do not report to a fixed headquarters location, but report to wherever their supervisors direct them to report; as such, their reporting locations may change daily. SOMF ¶5. It is at the discretion of the CN Railroads as to whether to designate positions as Headquartered or Mobile. SOMF ¶6. Under the CN LOA, Mobile employees, those who are assigned to a traveling gang or whose work requires an overnight stay, are eligible for a travel allowance as specified in that agreement, if they forego lodging and instead travel home. SOMF ¶¶4, 7.

The Carriers take the position that certain Mobile employees are not eligible to receive travel allowance payments under the CN LOA for travel between their reporting points and their homes. They say that only employees who perform work that requires staying overnight in a lodging facility are eligible for mileage reimbursement and a travel allowance; or they say that employees may not be eligible for travel allowance based on where the employees report to work; the CN Railroads deem these employees ineligible for travel allowances even though it was the

2

Carriers that had designated the positions of the employees as Mobile, and had determined where the employees report to work. SOMF ¶9. Under the position of the CN Railroads, a "Mobile" employee, as described in paragraph 2 of the CN LOA whose reporting point, as determined by a supervisor, is less than 50 miles from the employee's home, is not eligible a $6 per hour travel allowance if the railroad decides that the work does not require overnight lodging, or if the railroad otherwise deems the employee's reporting point as disqualifying the employee from receiving a travel allowance. SOMF ¶10, 13.

In particular, the CN Railroads are refusing to pay travel allowances to employees in traveling gangs in the Carriers' Bridge and Building Departments who return home from their reporting point when the railroads decide their work does not require overnight lodging, or when the railroad believes that their reporting point disqualifies them from receiving travel allowances. SOMF ¶14. Specific examples of the Carriers' refusal to pay travel allowances to certain types of Mobile employees are provided in the declarations of a number of BMWED members that are submitted with this motion ((Exhibit 6); those individuals are exemplars of the types of employees that the CN Railroads have unilaterally deemed ineligible for travel allowances.

The CN Railroads have refused to provide travel allowances to certain types of employees who are eligible for the allowances under the CN LOA, even though a BMWED officer participated in conference calls with officials of the CN Railroads and BMWED members at which the BMWED officer recited several different Mobile employee scenarios and explained the entitlement of those hypothetical employees to travel allowances and mileage reimbursements; one of the CN Railroad officials confirmed that he agreed with the BMWED officer's explanations. At no point did any of the CN Railroads officials take exception to the BMWED officer's description of employee eligibility or entitlement to travel allowances in the described situations,

3

assert that not all Mobile employees would be entitled to travel allowances under the CN LOA, or assert that certain non-Headquartered positions were excepted from the entitlement to travel allowances. Joseph Letizia Declaration (BMWED Ex. 1) ¶18.

In a recent conversation between the Labor Relations Director for the CN Railroads and a BMWED Vice President concerning the CN LOA, the Labor Relations Director stated that the CN Railroads just really did not understand all of this [the scope of the agreement] when "this thing" started, and that "We just didn't know the magnitude of this when this thing started". Galen Owen Declaration (BMWED Ex. 2) ¶8.

### III. MAJOR AND MINOR DISPUTES UNDER THE RAILWAY LABOR ACT

#### A. The RLA's "Status Quo" Requirement and Its Processes For Resolution of Disputes

RLA Section 2 Seventh prohibits changes in the rates of pay, rules and working conditions of employees "as a class, as embodied in agreements" without compliance with the notice and negotiation provisions of RLA Section 6, which details the process for negotiations for agreement changes and provides that while those processes are pending, "rates of pay, rules or working conditions shall not be altered by the carrier". In essence, Section 2 Seventh forbids unilateral changes in existing agreements, and actions that would constitute repudiation of an agreement; the parties are required to maintain the "status quo"—maintain existing rates of pay, rules and working conditions, and change them only by agreement or in accordance with RLA processes. *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 306 (1989) *("Conrail")*. In *International Brotherhood of Teamsters v North American Airlines,* 518 F. 3d 1052, 1056 (9th Cir. 2008), the Ninth Circuit stated, "Section 2 Seventh precludes the parties from making unilateral changes in working conditions 'embodied in agreements' except as provided in such agreements or through the process described in section 6....". The Supreme Court has described the "status

4

quo" provisions of the Act as "'central to its design'"; the Court said that their "immediate effect is to prevent the Union from striking and management from doing anything that would justify a strike." *Detroit and Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 150 (1969).

Disputes over changes in existing agreements, or creation of new agreements are called "major disputes." *Conrail*, 491 U.S. at 302. *See also Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific R. R. Co.,* 879 F. 3d 754, 757 (7th Cir. 2017)—"major disputes pertain to creation of new contracts affecting any mandatory subject of bargaining or modifications of existing contracts that have the same effect"; *Mitchell v Continental Airlines, Inc*. 481 F 3d 225, 230-231 (5th Cir. 2007)—a major dispute "arises when a CBA is not in place or when a party seeks to change the terms of a CBA"; *Ass'n of Flight Attendants v. Mesa Air Group*, 567 F. 3d 1043, 1047 (9th Cir. 2009)—"Major disputes generally result from attempts by labor or management to impose new obligations or create new rights".

Disputes that do not involve creation of new agreements or changes in pre-existing rates of pay, rules and working conditions, but rather involve interpretation or application of existing agreements, are called "minor disputes", and they are subject to compulsory and binding arbitration under RLA Section 3 (45 U.S.C. §153). *Conrail,* 491 U.S. at 304; *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific,* 879 F. 3d at 758.

**B. The Method For Distinguishing Between Major Disputes And Minor Disputes**

When a union asserts that a carrier has violated the RLA by unilaterally changing the status quo, and the carrier responds that its actions are permissible under the collective bargaining agreement so the dispute is "minor", a court may not accept the carrier's contractual defense at face value; "proper functioning of the statutory scheme requires the court to substitute its characterization for that of the claimant". *Conrail*, 491 U.S. at 305-307. It is not enough that a

5

dispute over the carrier's actions arises from its interpretation of existing agreements. The carrier has the burden of establishing that its minor dispute claim is based on an interpretation of the agreement that is not frivolous, insincere or made in bad faith; that its position is at least "arguably justified by the terms of the parties' collective bargaining agreement". *Conrail*, 491 U.S. at 307, 310; *Wheeling & Lake Erie Ry. Co. v. B'hood of Locomotive Engineers and Trainmen,* 789 F. 3d 681, 692 (6th Cir. 2015)—a court must reject a minor dispute defense "[i]f a party asserts a contractual basis for a claim without sincerity or on insubstantial grounds". A "distinguishing feature" of a minor dispute is that it can be "conclusively resolved by interpreting the existing agreement". *Conrail* 491 U.S. at 305. Although the burden on the carrier to demonstrate a minor dispute is "relatively light", the carrier must satisfy this burden in order to establish that a dispute is minor. *Conrail*, 491 U.S. at 307; *Wheeling & Lake Erie,* 789 F. 3d at 697—"The Railroad failed to carry its burden to show that its position was arguably justified by the terms of the parties' collective bargaining agreement".

    A carrier may assert a minor dispute based on its interpretation of an implied agreement derived from past practice. But, in order to do so, the carrier must first show a past practice that establishes an implied agreement, then it must show that its interpretation of that agreement is arguably justified by its terms. *Conrail* 491 U.S. at 310. In *Conrail*, the Supreme Court first determined that there was a past practice of requiring medical examinations of employees and that such examinations "routinely include urinalysis", before holding that a dispute over urinalysis drug testing was a minor dispute. *Id*. at 312-316. And to demonstrate that there is an implied agreement pertaining to the subject in dispute that may arguably be interpreted as the carrier contends, the carrier must show more than mere prior similar actions; it must show an established a pattern of conduct and a mutual understanding shown by mutual intent and knowledge of, and acquiescence

6

in, prior acts over a sufficient period of time that it becomes an agreement. In *Railway Labor Exec.s Ass'n. v. Norfolk & Western Ry*. 833 F. 2d 700, (7th Cir. 1987), the Seventh Circuit held that for there to be an implied agreement by past practice there must be a well-established, mutually accepted, course of dealings between the parties as to the disputed action. *Id.* at 705 n. 4. More recently, in *Brotherhood of Locomotive Engineers v. Union Pacific R.R.,* 879 F. 3d 754 (7th Cir. 2018), the Seventh Circuit stated: "Naked assertions of past practice are not enough. Nor may the railroad lie its way to arbitration", there must be some evidence to support or refute the assertion that a practice has become an implied term of the parties' agreement. *Id.* at 758. Furthermore, where the carrier's position is clearly contrary to plain contract language, a past practice claim cannot convert the dispute into a minor dispute. *See Railway Labor Executives Ass'n. v. Norfolk & Western Ry*. 833 F. 2d 700, 705 n. 4 (7th Cir. 1987)—"parties cannot use evidence of past practices to contradict the explicit language of their written agreement in an effort to change the characterization of a dispute as either major or minor"; *Wheeling,* 789 F 3d at 694—"Because the language of the scope rule is express, we need not consider any implied terms".

Because a minor dispute finding can deprive a federal court of jurisdiction over a statutory claim, and the determination on the nature of the dispute depends on whether the carrier's contractual defense is sincere and arguable under the terms of the agreement with the burden of proof on the carrier, a court required to classify a dispute must make an initial assessment of the merits of the defense. As the *Conrail* Court said, the courts must make their own classification of disputes because otherwise parties could "undercut 'the prohibitions of §2, Seventh and §6 of the Act' against unilateral imposition of new contractual terms". 491 U.S. at 305-306. The Court therefore held that "[i]n such circumstances, protection of the proper functioning of the statutory scheme requires the court to substitute its characterization for that of the claimant". *Id.* at 306.

7

Accordingly, when confronted with a union's assertion of a violation of Section 2 Seventh, and a carrier's minor dispute defense, a court is not a mere conduit to arbitration; it is a gatekeeper, diverting cases to arbitration when the carrier makes the necessary showing, but adjudicating the merits of the statutory claim when the carrier does not. This assessment necessarily includes the factual context of the claim because a court cannot possibly decide whether the carrier's contractual defense was arguably justified under the terms of the agreement; and cannot assess the arguability of a carrier's interpretation of an agreement in a particular dispute without reference to the facts. It may be that once a court decides a dispute is indeed minor it does not then resolve disputed facts; but, until that point, a court making a minor dispute determination must assess the facts. Thus, in *Conrail*, the Supreme Court examined the past practice regarding medical examinations before holding that a dispute over urinalysis drug testing was a minor dispute. 491 U.S. 312-316. In *Wheeling,* 789 F. 3d at 692-694, the court reviewed both the language of the agreement and the parties' evidence concerning bargaining history and past practice in finding a major dispute. *See also Brotherhood of Maintenance of Way Employes v. Chicago and North Western Transp. Co.*, 827 F. 2d 330 at 334 (8th Cir. 1987)—"a court must first determine what the agreement of the parties is....On review, questions as to the content of the agreement of the parties are factual...."(citing *Brotherhood of Maintenance of Way Employees Lodge 16 v. Burlington Northern R.R. Co.*, 802 F. 2d 1016, 1022 (8th Cir. 1986); and 827 F. 2d at 334 n. 4 and 5 reviewing and resolving disputes as to the facts; *Burlington Northern R.R. Co. v. United Transp. Union*, 862 F. 2d 1266, 1272-1277 (7th Cir. 1988); *Brotherhood of Maintenance of Way Employes Division/IBT v. National Railroad Passenger Corp.*, 2016 WL 6783199 at *7 (D.D.C. 2016)— "the court must address the threshold question of whether any implied CBA

terms exist at all".[1]

Given this role of the courts, carrier actions challenged as unilateral changes have been held to involve major disputes when the courts found that the challenged actions conflicted with clear contract language, and when the actions were not even arguably justified by the agreement terms or past practices relied on by the carriers. *See e.g. Wheeling & Lake Erie,* 789 F. 3d at 693, where the scope rule of the collective bargaining agreement required a conductor on every train, the railroad's contention that the agreement arguably permitted conductor-less trains was "obviously insubstantial in light of the express language" of the scope rule; *Brotherhood of Locomotive Engineers v. Springfield Terminal Ry.,* 210 F.3d 18, 34 (1st Cir. 2000); *Local 553 TWU v. Eastern Airlines,* 695 F. 2d, 671, 676-678 (2d Cir. 1983)—affirming a district court decision holding that the carrier's plan to assign flight attendant work on a newly acquired route to employees not covered by the parties' CBA involved a major dispute; *See also Int'l Ass'n of Machinists v. Varig, SA*, 499 F. Supp. 2d 469, 472, 474-475 (S.D. NY 2007)—carrier violated Section 2 Seventh by refusing to pay severance pay for permanently laid off employees where CBA provision clearly mandated such payments, and dispute over the meaning of a different severance pay provision was irrelevant since the union did not rely on that provision; *aff'd* 302 Fed Appx 10, 12 (2d Cir. 2008)(quoting *Conrail*)–the carrier "has not met its 'relatively light' burden of showing that the dispute is minor under the RLA, because it has failed to convince us that its interpretation of the CBA is 'neither obviously insubstantial or frivolous nor made in bad faith'".

---

[1] *See also Railway Labor Exec.s Ass'n v. Norfolk & Western Ry. Co.* 833 F. 2d 700, 705-706 (7th Cir, 1987)—"The content of the parties' agreement is a factual question"; *Alton & Southern Lodge No. 306 v. Alton & Southern Ry.*, 849 F. 2d 111, 1114 (8th Cir. 1987)–"The determination of the terms of an agreement is a question of fact"; *Burlington Northern and Santa Fe Ry. v. Brotherhood of Locomotive Engineers*, 2002 WL 47963 (N.D. Ill. 2002)– "To determine whether the dispute in this case is a major or minor dispute, this court must refer to the parties' existing collective bargaining agreement"(*citing RLEA v. N&W, supra.*).

Thus, it is not enough that the carrier's action is arguably justified or non-frivolous in the abstract (*e.g.* that the action seems objectively reasonable, operationally sound, or wise policy), the action has to be arguably justified under the terms of the agreement (written or implied); and the contract claim has to be sincere and not made in bad faith; and the burden (albeit light) is on the carrier to show that the dispute is minor. Although the *Conrail* test gives the carrier the benefit of the doubt and does not require the carrier to provide evidence sufficient to persuade the court to make an ultimate determination that the carrier is ultimately right on the merits, when there is a dispute as to an arguable interpretation of an agreement, to prevail on a minor dispute defense, the carrier must provide adequate evidence and argument under the *Conrail* test. *See Brotherhood of Maintenance of Way Employees v. Atchison Topeka & Santa Fe Ry.*, 138 F. 3d 635 (7th Cir. 1998), an *en banc* Seventh Circuit decision that rejected an argument that a court must "...ask what an arbitrator might do. If an arbitrator might rule for the railroads, then that's it– the dispute is minor and it must go to arbitration". Rather, the Court stated, "... mimicking arbitrators is not what Congress commanded us to do. Congress has committed the classification of RLA disputes to federal judges, not to arbitrators; we have not warrant to cede that commission de facto". *Id*. at 642.

IV. STANDARDS FOR GRANTING SUMMARY JUDGMENT

A court should grant summary judgment if the record shows no genuine issue exists as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *SMS Demag Aktiengellschaft v. Materials Services Corp.*, 565 F 3d 365, 368 (7th Cir. 2009); *Duff v. Grandberry*, 2017 BL 188499 (N.D. IL 2017). In seeking summary judgment, the movant informs the court "of the basis for its motion, and identifies those portions of 'the pleadings, depositions, answers to interrogatories, and

10

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.". *Celotex*, 477 U.S. at 323. After the movant does so, to avoid summary judgment, the nonmovant must demonstrate that there is evidence upon which a jury could find in the non-movant's favor. *Modrowski v. Pigatto*, 712 F. 3d 1166, 1169 (7th Cir. 2013). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A genuine evidentiary dispute is one that is "reasonably contestable". *SMS Demag, supra.*, 565 3d at 368. And the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004). No genuine issue for trial exists, and summary judgment should be granted, "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992).

**V. ARGUMENT**

    **A. BMWED is Entitled to Summary Judgment that the CN Railroads Have Abrogated the CN LOA**

Paragraph 2 of the CN LOA expressly provides that employees who are in "traveling gangs or who perform work that requires staying overnight in a lodging facility"; employees who are "classified as Mobile", are eligible for travel allowances under the conditions set forth in that agreement. But the CN Railroads are simply refusing to pay travel allowances to certain of their employees who are "Mobile" employees under that agreement; the CN Railroads have just unilaterally declared those employees to be ineligible for the allowances. When a carrier simply ignores, or fails to adhere to, the plain and unambiguous terms of an agreement, and thereby abrogates or unilaterally changes the agreement, the carrier violates Section 2 Seventh. *Conrail,*

491 U.S. at 302-303; *Wheeling & Lake Erie*, 789 F. 3d at 692-694; *Brotherhood of Locomotive Engineers v. Springfield Terminal*, 210 F. 3d at 34; *Int'l Ass'n of Machinists v. Varig, SA*, 499 F. Supp. 2d at 472, 474-475.

There is no merit whatsoever to the CN Railroads' position that the CBA does not require it to pay travel allowances to all employees who fit the description in paragraph 2 of the CN LOA. That provision does not create any basis for reasonably distinguishing among different types of Mobile employees or assignments; nor does it in any way distinguish among employees in different maintenance of way departments (*e.g.* Track vs. Bridge & Building). Under the plain terms of the agreement, Mobile employees, those who are in a traveling gang or whose work requires an overnight stay, are eligible for a travel allowance if they forego lodging and instead travel home. Given the unambiguous language of the agreement, the position of the Carriers constitutes a unilateral change of the agreement, and they are in violation of Section 2 Seventh.

The CN Railroads have asserted that the Court lacks jurisdiction to hear and decide this dispute because they assert it is one that involves interpretation of a collective bargaining agreement and is therefore a minor dispute that must be resolved in arbitration. But such an argument misstates the applicable law. As BMWED has shown, under the Supreme Court's *Conrail* decision, and subsequent lower court decisions, a dispute is only minor if the carrier's interpretation of the parties agreement is <u>at least arguable under the terms of the agreement</u>; and if <u>the carrier's position is sincere and not made in bad faith</u>. It is not enough that the parties differ in interpretation of the agreement; if the carrier's position is not even arguably justified by the terms of the agreement, or if the proffered interpretation is not sincere but a concoction to avoid the prohibitions of Section 2 Seventh, the contractual defense must be rejected, and the dispute is a major dispute.

12

Here, given the plain language of the CN LOA, any contention by the CN Railroads that their position is justified under the agreement would not be based on an interpretation of the agreement that is even arguable under its terms. Employees in traveling gangs, or whose work requires an overnight stay-Mobile employees- are eligible for the allowances in the circumstances described in paragraph 5 of the agreement. The CN Railroads have not denied allowances by contending that certain employees did not fit the circumstances described in paragraph 5; the Carriers have simply refused to treat those employees as even eligible for allowances. Additionally, Mobile employees who drive home rather than staying at carrier provided lodging, and are being denied travel allowances, are being reimbursed for their mileage under the CN LOA. There is nothing in that agreement that even arguably supports treating an employee as eligible for mileage reimbursement, but not for travel allowances. Section 5 of the agreement simply states that "A Mobile employee who chooses to drive home and forego overnight lodging and M&IE (meals and incidental expense)… will be eligible for mileage reimbursement and travel allowance payment according to the following terms". There is no non-frivolous basis for the CN Railroads to contend that employees may be eligible for mileage reimbursement but not a travel allowance.

Some of the CN Railroads' communications with the Union assert that to be eligible for an allowance, the employee's work must require an overnight stay. But the agreement does not limit eligibility for travel allowances to employees whose work requires an overnight stay; it applies to employees in traveling gangs <u>and</u> to employees whose work requires an overnight stay; both types of employees are Mobile; eligibility is not limited to employees whose work is deemed by the railroad as requiring an overnight stay. Indeed, the agreement expressly provides for payment of allowances to employees when their travel home from a reporting point, which is <u>either</u> a hotel <u>or</u> a job site, is equal to or less than 50 miles—explicitly recognizing that the employee may not be

13

working where overnight lodging is required, and explicitly providing for travel allowances for distances from an employee's home that would not ordinarily require staying in a hotel (less than 50 miles). CN LOA, Letizia Ex. A ¶5.b.i. Furthermore, it is the Carriers that designate positions as Mobile or Headquartered. If a carrier does not want to pay a travel allowance to an employee, it may designate the employee's position as Headquartered. Of course, in doing so, the carrier will lose the flexibility of freely assigning the employee to different reporting points based on perceived need at a point in time, since Headquartered employees report to fixed locations. The CN Railroads like the ability to assign employees to different reporting points, but they seek to evade the consequence of doing so, which is that the employee is eligible for travel allowance payments. The position of the CN Railroads seems to be that there can be employees who are assigned to traveling gangs, who have been designated as Mobile, but who are not eligible for travel allowances. The Carriers are essentially arguing that there are three categories of positions: Headquartered, Mobile and eligible for travel allowances, and Mobile but not eligible for travel allowances. There is no basis in the CN LOA or the Carriers' CBAs with BMWED for this third category of positions. Under the CBAs, positions are either Headquartered or Mobile; and under the CN LOA, all employees assigned to traveling gangs, and all employees whose work requires overnight lodging, are eligible for the allowances. By refusing to pay allowances to some Mobile employees, the CN Railroads have abrogated the CN LOA.

Furthermore, as explained by BMWED Vice President -Western Region, Galen Owen, the CN Railroads' Labor Relations Director Thomas Sullivan told Mr. Owen that the Carriers employ 150 to 200 Bridge and Building workers, as well as other workers who are classified as "Mobile", but whose work does not usually require them to stay overnight away from home at a hotel, that the CN Railroads just really did not understand all of this when "this thing" started, and that the

14

Carriers have been reclassifying some positions as Headquartered, but they are not sure they have the headquarters or the trucks for them to use in order to do so. Declaration of Galen Own ¶8. That the CN Railroads did not fully understand the plain terms of the agreement they entered, or its practical application, does not mean that they can unilaterally change that agreement—that is the essence of a major dispute. And any argument now presented by the CN Railroads that attempts to justify the Carriers' position by parsing language in the agreement would not be a sincere or good faith argument, when the Carriers admit that they did not fully understand the agreement they entered.

## VI. CONCLUSION

For the reasons set forth above, BMWED respectfully submits that the material facts in this case are not disputed or cannot be disputed, and, given those facts and controlling law, BMWED is entitled to a summary judgment declaring that the CN Railroads have violated RLA Section 2 Seventh by refusing to pay travel allowances to all employees who are eligible for such allowances.

Respectfully submitted,

*/s/ Richard S. Edelman*
Richard S. Edelman (ARDC No. 416348)
Mooney, Green, Saindon, Murphy & Welch
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
redelman@mooneygreen.com

*/s/ Wesley Kennedy*
Wesley Kennedy (ARDC No. 6188189)
Karen I. Engelhardt (ARDC No. 3128850)
Patrick J. Foote (ARDC No. 6335874)
Allison, Slutsky, and Kennedy
230 West Monroe, Suite 2600
Chicago, Illinois 60606
(312) 364-9400
kennedy@ask-attorneys.com
kie@ask-attorneys.com
foote@ask-attorneys.coM

*Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT*

15